If the plaintiff had forfeited his right to be carried as a passenger, by refusing to show his ticket when requested to do so by the conductor, and if the right was not restored by subsequently complying, then his expulsion was lawful, and he has nothing to complain of, unless greater force and violence were used than his own resistance rendered necessary. The verdict of the jury was for a wrongful expulsion and not for an excess of force.
If, on the other hand, the conductor had no right to eject the plaintiff from the train after he had complied with the request and produced the ticket, then I do not see on what principle the defendant can be made liable for the wrong. The regulation, and instructions to the conductor, as we have said, were lawful, and they did not, in their terms or construction, profess to justify the trespass and eviction. The result is, that the wrong was done without any authority, and therefore that those who actually did it are alone answerable. The judge was requested to charge the jury that the plaintiff, if entitled to recover at all, could only recover such damages as he had sustained in consequence of the defendant's not performing its contract to carry him to Scio, to wit, damages to his business. The judge refused so to charge, but did charge that the plaintiff could recover, if at all, for personal ill treatment; in other words, for the unlawful assault and battery. It seems to me that the request was essentially right, and that the refusal and charge were erroneous. The request was made and the charge given upon the theory that the plaintiff's expulsion was unlawful. But if unlawful, then the company had not authorized it. There was, no doubt, an implied contract to carry the plaintiff to the place for which he had bought his ticket, and that contract was broken. The defendant, being bound to carry him to Scio, might be liable *Page 469 
for a breach of the engagement, even if the plaintiff had been expelled by another passenger. The defendant was bound even to prevent an unlawful expulsion and to carry the passenger through. But this is a liability entirely different from the one enforced at the trial. The conductor, according to the plaintiff's own showing, without authority from his principal, assaulted and expelled him from the train; and, under the charge given to them, the jury rendered their verdict for the personal wrong and outrage. This I think is contrary to the law of the case.
The conductor, it is true, testified that he acted "in pursuance of instructions from the defendant." By this I understand merely that he pretended to act, and justified his conduct, under the regulation and instructions which have been referred to. But if he mistook the authority conferred upon him, both when he committed the trespass and when he was examined as a witness, it cannot alter the law or change the rights of the parties. His own mistake as to the extent of his powers cannot make the railroad company liable for acts not in fact authorized.
The judge also charged that a passenger is bound to exhibit his ticket when reasonably requested to do so; but if the conductor knew that the plaintiff had paid his fare, he had no right to expel him from the cars, although he refused to exhibit his ticket. It had been proved that the request was made just after the train had left a station, and while the conductor was going through and examining the tickets of passengers. The plaintiff, when called upon, refused to exhibit his ticket, saying that he had once shown it, referring to some previous occasion after he had taken his seat. It will be seen therefore that the request was made upon a proper occasion, in the usual round of the conductor's duties; and no suggestion was made on the trial that such request was dictated by any mere caprice or whim, or that it was fraudulently made in order to get a pretext for expelling the plaintiff from the train. Now, the *Page 470 
regulation of the company required the plaintiff on this occasion to show his ticket, and it contained no qualification depending on the previous knowledge of the conductor that the fare had been paid. It is, however, plausibly urged that, as the object of exhibiting a ticket is to show the conductor that the fare has been paid, he has no right to enforce the regulation if he already knows the fact. Still, I am of opinion that this is not a sound view of the question. The difficulty is in the nature of the inquiry which a jury must always be allowed to entertain, if we adopt this suggestion. How, it may be asked, is it to be proved that the conductor knew the passenger had paid his fare, if he refuses to exhibit the ordinary evidence of the fact? It can only be proved by showing that the ticket had already been shown to the conductor on some former occasion, or that the passenger himself or some third person informed him that the fare had been paid. I know of no other mode of getting at the fact; but the moment we admit any or all of these modes of inquiry, the regulation itself becomes entirely worthless. The conductor clearly is not bound to take the word of a passenger who refuses to comply with the regulation, nor the word of a third person; and still more clearly it will not do to say that one exhibition of the ticket must suffice in all cases or in any case. The rule is a reasonable one, that the conductor may ask to see the tickets of passengers after leaving each station where new passengers are taken up. If a passenger refuses to comply with such a rule, and is expelled, the law should not allow him to allege and try the fact of the conductor's knowledge of the payment of the fare.
Without examining other questions, I am of opinion that the judgment should be reversed and a new trial granted.
All the other judges, except BOWEN, J., who dissented, concurred in this result, the court, however, declining to *Page 471 
pass upon the question last discussed by DENIO, C.J., or that first discussed by COMSTOCK, J.
Judgment reversed and new trial ordered.